[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed October 7, 1996
In this case, the plaintiff claims that he was a licensed real estate appraiser and as such rendered services for the defendant who was also a licensed real estate appraiser. A dispute developed over the amount of money that the plaintiff was entitled to receive for the appraisal work that he did. The plaintiff has brought suit; in the first count he alleges a breach of the agreement he had with the defendant because the defendant has not paid the amount due on the account. The second count alleges a violation of CUTPA § 42-110a et seq of the general statutes.
The defendant has filed a motion for summary judgment directed against the CUTPA count. In his affidavit the defendant states he is the owner of Philip W. Ball Associates Real Estate Appraiser and Consultant. He further states the plaintiff was CT Page 6283 "employed" by him "part-time" and that he "was paid as an independent contractor." The plaintiff according to the defendant Ball "performed research, inspection, and other related appraisal functions and was paid based on the type of work performed and the basis of the assignment." The affidavit goes on to note that "at some point" the plaintiff Murphy "became dissatisfied with his compensation," asked for a review, was dissatisfied with that and then "severed his relationship with my office." In a second affidavit the defendant states the plaintiff was "employed as an independent contractor."
The plaintiff's affidavit states he performed services for Mr. Ball as a real estate appraiser, he said he did so as an independent contractor and was provided with IRS forms 1099 not IRS forms W-2. The affidavit goes on to state he performed appraisal services on 48 properties in 1990 and 84 properties in 1991. Each assignment involved different properties and separate transactions. The plaintiff then alleges that the plaintiff would be paid 50% of the amounts Ball charged his clients for appraisals that the plaintiff worked on. The affidavit then goes on to allege facts and claims asserting the plaintiff was not fully compensated.
The motion as originally framed broadly states that CUTPA "does not apply to employer-independent contractor or employer-employee relationships." It is also alleged that the cause of action here "arises out of one business relationship and does not allege wrongful act with such frequency as to indicate a general business practice." Furthermore, argues the defendant, whether the relationship is defined as an employer-independent contractor or an employee relationship it "is still an employment relationship an therefore, is not itself trade or commerce for the purposes of CUTPA."
As the issues were framed at this point there does not appear to be a factual dispute between the parties; that is there is no dispute raised by the parties as to the factual nature of the relationship between them. In any event, the question before the court given the issues raised appears to be a legal one.
When the Federal Trade Commission Act was passed in the earlier part of this century the primary motivation for doing so was to protect consumers. It was thought initially that a federal law aimed at ensuring fair rules in the market place and aimed solely at competitors and their conduct would ultimately protect: CT Page 6284 consumers. In 1938 the federal act was amended to provide direct protection to consumers. Our act at § 42-110b(b) states our courts "shall be guided by interpretations given by the Federal Trade Commission and the federal courts" to that section of the Federal Trade Commission Act analogous to our § 42-110b(a).
This dichotomy of purpose in the federal and thus our legislation was underlined in Larsen Chelsey Realty Co. v.Larsen, 232 Conn. 480 (1995). That case held that violations under our act do not only arise from a consumer relationship, p. 497. On the same page the court goes on to say that "the legislative history of CUTPA reveals that although consumers were expected to be a major beneficiary of its passage, the act was designed to provide protection to a much broader class." But this court cannot rely simply on that broad language to sustain the plaintiff's position here that the relationship he had with the defendant was subject to the protections of the act. In the ensuing discussion by the court at pages 497-98 the only "broader class" cited in the legislative history and the federal cases referred to are competitors, that is, business-people who would be harmed by unscrupulous competitors but for the act's protections. And Larsen itself basically holds the act applied because the defendant's actions occurred "outside the confines of the employer-employee relationship . . . The plaintiff contends, in short, that Larsen accepted a job with a competing real estate broker and then, acting as a competitor, took actions that harmed the plaintiff," 232 Conn. At pp. 493-94. Thus, the Larsen case is not directly relevant to the case now before the court since we are not dealing with a claim made by a competitor that a rival engaged in unfair competition within trade or commerce.
The question really before the court is whether the relationship between the plaintiff and the defendant can be defined as a consumer relationship — what else is there in the universe of trade and commerce after all but competitors and how they relate to other competitors and consumers and how they relate to individuals or businesses who supply services? See § 42-110a($) and definition of "Trade" and "Commerce." It would seem to follow then that the resolution of the issue before the court turns on the appropriate ambit to be given to Quimby v.Kimberly Clark Corp., 28 Conn. App. 610 (1992), which held that the employer-employee relationship in that case was not a consumer relationship under CUTPA and thus could not be governed by CUTPA. What is significant on this issue is the explicit language in Larsen at footnote 16 at page 493 where the court CT Page 6285 emphasized that it was not deciding "whether the appellate court's holding in Quimby accurately sets forth the law with respect to CUTPA's applicability to employer-employee relationships." In Quimby the plaintiff employee contended her self-insured employer had administered her claim of injury improperly. In Larsen at 232 Conn; Page 493, the Supreme Court characterized the Quimby case in the following manner: "The misconduct revolved entirely around administrative shortcomings and an intra-company worker's compensation dispute." Quimby,
then, should properly be confined to its facts. CUTPA issues cannot be resolved by resorting to labels and deciding CUTPA doesn't apply just because there is an employer-employee relationship. That would defeat the broad ameliorative purposes sought to be achieved by our act and the federal act. Obviously, given the nature of the "misconduct" alleged in Quimby coupled with the fact that it arose in the employment context, there was no consumer-commercial vendor dispute between the plaintiff employee and defendant employee in that case. But Quimby should not be woodenly applied to exclude all CUTPA coverage where a dispute arises between a person hired and the person or business who hires the individual. In some of those situations a consumer relationship or a dispute arising out of a consumer relationship might exist, in some not, depending on the nature of the dispute in the context of the relationship.
In this case, the plaintiff, a professional real estate appraiser, in effect hired out his services to another appraiser. He conducted his appraisals independently and on an as submitted basis. Apparently there was no specific contract controlling how many assignments he should receive or requiring that he perform his services for a specific period of time or under the control and direction of the defendant for whom he was performing the service. There is no indication that the plaintiff's work conditions or environment were under the control of the defendant to whom he provided the services. The record before the court is devoid of this type of information. Suffice it to say that, based on the information submitted to the court, it cannot be said as a matter of law no consumer relationship existed here and that the protections of CUTPA for abuses of that relationship therefore do not apply.
In light of this analysis and the facts also before the court, it cannot be said either that this CUTPA claim fails because only an isolated transaction was involved, cf. Gleason v.The Huntington Mortgage Co., et al., 1 Conn. Ops. 325 (1995); CT Page 6286Bigler v. Centerbank Mortgage Co., et al., 13 CONN. L. RPTR. 142 (1992): Franklin Todd Renz v. Milano Development et al., 12 CONN. L. RPTR. 528 (1994). The plaintiff alleges that as to a number of separate and isolated assignments performed by him, he was not paid what was owing to him. This would certainly seem to assert a "general business practice" as between these parties given the particular business relationship the plaintiff and defendant had in this case. The fact that the terms of payment were made pursuant to one agreement does not alter this conclusion since the terms were to govern a variety of distinct transactions.
The defendant sought to expand the basis of his motion by also alleging that the Uniform Standards of Professional Appraisal Practice and the requirements of § 20-320 C.G.S. do not apply to this case. The plaintiff sought to rely on violations of these acts to establish his CUTPA claim. Assuming for the purposes of argument that the defendant is correct, I do not find anywhere in CUTPA that a statutory violation of a non-CUTPA act must be alleged or a violation of a professional code must be pled. The plaintiff makes factual allegations, aside from and concurrently with his reliance on these statutes or regulations and the summary judgment motion does not specifically address the adequacy of the CUTPA claim based on such allegations. It is not appropriate for the court on its own to do so. Trial is imminent and the trial judge can more appropriately address this question. The factual claims are not complicated and the CUTPA claim is based on the allegations made in the non-CUTPA count.
The motion for summary judgment is denied as to the CUTPA count of the complaint.
CORRADINO, J.